UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| DANIEL McFADDEN, | ) | Civil Action No.: 2:13-cv-3039-DCN-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| STAHL CRANE SYSTEMS, INC. | ) | |
| and KONECRANES, PLC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## I.    INTRODUCTION

In this employment discrimination case, Plaintiff alleges Defendants discriminated against him based on his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq. and discriminated and retaliated against him based upon his disability in violation of Americans with Disabilities Act (ADA), 42 U.S.C. § 12101, et seq.  Presently before the court is Defendants' Motion for Summary Judgment (Document # 81).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), DSC.  This report and recommendation is entered for review by the district judge.

## II.    FACTS

Defendant Stahl Crane Systems, Inc. (Stahl) is a company engaged in the manufacture of wire rope hoists and chain hoists, which are parts of large cranes and other lifting equipment that are ultimately sold to the manufacturing industry, shipyards, ports, and terminals.  Def. Resp. to L.R. 26.03 No. 1 (Document # 13).  McFadden began working for Defendant in January of 2003 when he was 48 years old as a Production Manager for Stahl's predecessor, Crane Systems, Inc., at its

Charleston, South Carolina location. Pl. Dep. 28.[1]  During his deposition, Plaintiff described his job

duties as a Production Manager:

> . . . Overlook the order that has been placed, to make sure the equipment on the order matched what the customer actually was going to receive, research the stock on hand versus the stock allotted and promised to customers; take that allocation, based on what equipment we had on hand, make the production schedule to meet the promised deliveries on the purchase orders; make sure that the components necessary to complete the equipment was available and on hand and matched the production schedule; keep current purchase agreements in place and constantly try to get better pricing and delivery; do product improvement through discussions and meetings with customers; try to improve sales by going on sales calls with the salesmen, training the salesmen at the sales meetings on new product developments, features; lend support to the service and parts personnel, primarily the parts personnel . . . .

Pl. Dep. 57-58.  In December of 2005, Crane Systems, Inc. was acquired by KCI Holding USA, Inc.

and became incorporated as Stahl Crane Systems, Inc. (Wagner Dec. ¶ c) (Ex. C to Def. Motion).

After the acquisition, Plaintiff accepted an offer of employment by Stahl, maintaining the same job

title, pay, and benefits.  Pl. Dep. 49-50; Offer Letter (Ex. D to Def. Motion).  Plaintiff was 51 years

old at that time.  Pl. Dep. 49-50. At all times relevant to this lawsuit, Stahl's Managing Director

Robby Heeskens was Plaintiff's direct supervisor.   Pl. Dep. 32; Heeskens Dep. 54 (Ex. B to Def.

Motion).

    In December, 2004, plaintiff learned that he had colon cancer. Plaintiff Dep. 20. He

underwent surgery and related treatment while continuing to work in his position as Production

Manager. Pl. Dep. 72. After the treatment, Plaintiff's cancer went into remission. Pl. Dep. 21.

Plaintiff did not feel his job performance was negatively affected by his illness. Pl. Dep. 62-63.

    In July of 2008, Plaintiff learned that his color cancer had relapsed. Pl. Dep.67. He was

required to again undergo surgery and treatment, which included chemotherapy. Pl. Dep. 72. Plaintiff

---

[1]Portions of Plaintiff's deposition are attached to both Defendants' Motion and Plaintiff's Response.

requested and was granted a leave of absence from work. Request for Leave of Absence Form (Ex. E to Def. Motion). Stahl placed Plaintiff on short term disability during his treatment for the cancer. Pl. Dep.72, 106; Pl. Medical Leave of Absence Letter (Ex. F to Def. Motion). Nonetheless, he continued to follow his work while being treated, and he actually returned to work while remaining — at the company's insistence — on short term disability while he was undergoing continued chemotherapy. Pl. Dep. 106. On or about October 1, 2008, while Plaintiff was still on short-term disability, Heeskens offered him a new position as Research and Development ("R&D") Engineering Manager, as Heeskens felt Plaintiff would be well suited for the job. Pl. Dep. 116-18, 126; Heeskens Dep. 48. Heeskins testified that he felt Plaintiff's greatest strength was his technical knowledge and "get[ting] the product more Americanized," and this position made the most of those skills. Heeskens Dep. 48. Plaintiff expressed his concern about whether the new position would be phased out. Pl. Dep. 118. He did not want to accept any transfer if the new position was not going to be a source of long-term, permanent employment. Pl. Dep. 118. He was repeatedly assured by defendants' managers that the position was permanent and would not be eliminated. Pl. Dep.118, 121. Management advised Plaintiff that this assurance of permanence was based upon representations from higher level German-based management. Pl. Dep. 120. Based upon these assurances, Plaintiff accepted the position. Pl. Dep. 121, 125-26. Scott Vogel (b. 1971), who was then working as an Internal Sales Engineer, replaced Plaintiff as Production Manager. Pl. Dep. 196; Def. Resp. to L.R. 26.03 No. 2. Vogel had covered Plaintiff's duties during the period that Plaintiff was on a medical leave of absence. Heeskens Dep. 38-39.

Plaintiff remained on paid medical leave from July through November 20, 2008. Pl. Dep. 87, 97-102; Return to Work Letter (Ex. G to Def. Motion). When he returned to work on November 20, 2008, Plaintiff immediately began in his new position as R&D Engineering Manager. Pl. Dep. 126.

This position had the same benefits as the Production Manager position. Pl. Dep. 126.

In late 2009, due to the worldwide economic downturn, Konecranes[2] made significant structural reorganizations within the Company and eliminated overall headcount worldwide by more than 1,600 employees by the end of 2009. Konecranes 2009 Annual Report at 7, 12 (Ex. H to Def. Motion); Wagner Dec. ¶ d; Def. Resp. to L.R. 26.03 No. 1. At the time, Konecranes had two assembly facilities in the United States: a small one in Charleston, South Carolina (with approximately 18 employees) for Stahl CraneSystems, Inc., and a larger location in Springfield, Ohio (with over 100 employees) for the rest of the group. Wagner Dec. ¶ e. In order to reduce headcount and cut costs, Konecranes decided to eliminate all production functions in Charleston, and make the Charleston facility purely a sales office. Heeskens Dep. 18-19, 58-59; Wagner Dec. ¶ f. As a result, all Stahl-brand production and R&D work was transferred to the Springfield, Ohio facility. Heeskens Dep. 58-59, 62; Wagner Dec. ¶ g; Def. Resp. to L.R. 26.03 No. 1. This transfer resulted in the elimination of several positions, including Plaintiff's position as R&D Engineering Manager and his former position as Production Manager. Heeskens Dep. 19, 21-22, 59-60, 62; Wagner Dec. ¶ h; Def. Resp. to L.R. 26.03 No. 1. The reason for the elimination of these positions was to reduce costs because of the worldwide economic crisis and resulting downturn in Defendants' business. Heeskens Dep. 58-60; Wagner Dec. ¶ I.

As a result of the transfer of work from Charleston to the Springfield facility, Plaintiff's employment was terminated on October 23, 2009. Pl. Dep. 129-30. During the termination meeting with Heeskens and Stahl Managing Director Warner Wagner, Plaintiff told Heeskens and Wagner that "[he] would take a job anywhere in the U.S., [he] didn't care where, anywhere in the world,

---

[2]Both Plaintiff and Defendant refer to Konecranes, without any explanation of its relationship to Stahl or KCI Holding USA, Inc.

anyplace they had a spot for me, Dubai, [he] didn't care." Pl. Dep. 133. Wagner's response was that the Company did not have a position for him. Pl. Dep. 133-34. Neither Heeskins nor Wagner recall having this conversation with Plaintiff. Heeskins Dep. 24-25; Wagner Decl. ¶ j. Nevertheless, neither Wagner nor Heeskens was aware of any available position that Plaintiff could fill, nor did they have any ability to access any sort of central database of available jobs or otherwise easily identify other positions for which Plaintiff might be qualified. Heeskens Dep. 30, 61; Wagner Dec. ¶ l, k. Heeskens and Wagner knew that Konecranes was eliminating jobs to cut costs, and based on this fact, neither Heeskens nor Wagner had any reason to believe that the Company had available jobs for Plaintiff at that time. Heeskens Dep. 59-61; Wagner Dec. ¶ m.

On November 11, 2009, Plaintiff's attorney sent a letter addressed to Tom Sothard, who was President of KCI Holding USA, Inc., asserting that Plaintiff was protected by the ADEA and the ADA, that he "believe[d] [Plaintiff] ha[d] been a victim of unlawful discrimination[,]" and that Plaintiff "remain[ed] willing to accept a position with [Konecranes] or any of its affiliates anywhere in the world." Nov. 11, 2009, Letter (Ex. I to Def. Motion). Sothard did not take any action in response to the letter, other than to provide it to Defendants' legal department. Answer to Am. Compl. ¶ 22 (Document # 77).

Plaintiff filed a charge of discrimination with both the South Carolina Human Affairs Commission (SCHAC) and the Equal Employment Opportunity Commission (EEOC). Plaintiff received a notice of right to sue on August 22, 2013. This action followed on November 7, 2013.

## III.    STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, the moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v.

<u>Catrett</u>, 477 U.S. 317, 322 (1986).  Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. <u>Id</u>. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); <u>Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986).  The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).  The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party.  <u>Shealy v. Winston</u>, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. <u>Barber v. Hosp. Corp. of Am.</u>, 977 F.2d 874-75 (4th Cir. 1992).  The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324.  Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); <u>see</u> <u>also</u> <u>Cray Communications, Inc. v. Novatel Computer Systems, Inc.</u>, 33 F.3d 390 (4th Cir. 1994); <u>Orsi v. Kickwood</u>, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

-6-

## IV.    DISCUSSION

### A.    ADA and ADEA Proof Scheme

Plaintiff argues that Defendants discriminated against him because of his age and disability in violation of the ADA and the ADEA when they terminated his employment instead of finding another position for him.  Defendants argue that Plaintiff fails to establish a prima facie case with respect to either of these claims because he fails to show that he suffered an adverse employment action under circumstances giving rise to an inference of discrimination.  They further argue that he fails to show that Stahl's legitimate, non-discriminatory reason for his discharge was pretext.

The ADA provides:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  Violations of the ADA occur when the employer either wrongfully discharges a qualified individual with a disability or fails to make reasonable accommodations for him. Rhoads v. F.D.I.C., 257 F.3d 373, 387 n. 11 (4th Cir.2001).  Section 503 of the ADA prohibits retaliation against an employee "because [that] individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 12203(a).

The ADEA makes it unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age. 29 U.S.C. § 623(a)(1). It also makes it unlawful    for an employer to discriminate against any of his employees ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or litigation under this chapter." 29 U.S.C. § 623(d).

The Fourth Circuit has held that the causation and burden-shifting standards applicable in Title VII cases as set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)[3] are also applicable in discrimination or retaliation cases brought pursuant to the ADA and the ADEA[4] "where the defendant disavows any reliance on discriminatory reasons for its adverse employment action." <u>Ennis v. Nat'l Assoc. Of Business and Educ. Radio</u>, 53 F.3d 55, 58 (4th Cir.1995). Under the analysis set forth in <u>McDonnell Douglas</u>, Plaintiff has the initial burden of demonstrating a <u>prima facie</u> case of discrimination. <u>Bryant v. Bell Atlantic Maryland, Inc.</u>, 288 F.3d 124, 133 (4th Cir. 2002). If Plaintiff establishes a <u>prima facie</u> case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the Plaintiff's discharge. <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981). Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination <u>vel non</u>." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 143 (2000)(citing <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reason, but was pretext for discrimination. <u>Reeves</u>, 530 U.S. at 143.

---

[3] The <u>McDonnell Douglas</u> analysis was refined in <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993), and <u>Reeves v. Sanderson Plumbing Products</u>, Inc., 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

[4] The Supreme Court has noted that it "has not definitively decided" whether the <u>McDonnell Douglas</u> framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context." <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 174, 129 S.Ct. 2343, 2349 n.2, 174 L.Ed.2d 119 (2009). In the absence of further direction from the Supreme Court, the undersigned must follow Fourth Circuit precedent, which applies the <u>McDonnell Douglas</u> framework to ADEA claims. <u>See</u> <u>Hill</u>, 354 F.3d at 285; <u>see also</u> <u>Hartman v. University of Maryland at Baltimore</u>, 595 Fed.Appx 179, 181 (4th Cir. 2014) (continuing to apply the <u>McDonnell Douglas</u> framework following the <u>Gross</u> opinion).

### B.    Prima Facie Case[5]

### 1.    Discrimination

To establish a prima facie case of discriminatory discharge under the ADA, a plaintiff must show that (1) he was a "qualified individual with a disability;" (2) he was discharged; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. Haulbrook v. Michelin N. Am., Inc., 252 F.3d 696, 702 (4th Cir.2001).

To establish a prima facie case of discriminatory discharge under the ADEA, a plaintiff must show (1) he is a member of the ADEA's protected class (age forty or above); (2) he was performing his job satisfactorily; (3) he was subjected to an adverse employment action; and (4) that he was replaced by a substantially younger person, and/or that the adverse employment action(s) occurred under circumstances giving rise to a reasonable inference of unlawful age discrimination. Halperin v. Abacus Tech. Corp., 128 F.3d 191, 201 (4th Cir. 1997), overruled on other grounds by Baird v. Rose, 192 F.3d 462 (4th Cir. 1999).[6]

---

[5]Because Defendants rely on the same legitimate reason for the adverse action, and Plaintiff relies on the same pretext argument for both the discrimination and retaliation claims, the court will address the prima facie elements for each claim prior to proceeding with the burden-shifting analysis.

[6]Both parties analyze this case under the prima facie elements for discriminatory discharge as set forth above.  However, other courts faced with a claim of failure to place an employee in another position following a reduction in force have analyzed the claim under a failure to transfer/hire framework.  See, e.g., Janey v. N. Hess Sons, Inc., 268 F. Supp. 2d 616, 624 (D. Md. 2003); Allen v. Prince George's Cty., Md., 538 F. Supp. 833, 844 (D. Md. 1982), aff'd, 737 F.2d 1299 (4th Cir. 1984).  In those cases, the plaintiffs were required to show (1) they were a member of a protected group; (2) the defendant had an open position for which the plaintiffs applied or sought to apply; (3) they were qualified for the position; and (4) they were rejected under circumstances giving rise to an inference of discrimination.  Janey, 268 F.Supp.2d at 624; Allen, 538 F.Supp. at 844.  Applying this standard, Plaintiff would not be able to establish a prima facie case because, as discussed in more detail below with respect to Plaintiff's pretext argument, he has failed to present evidence sufficient to show that Defendants had open positions for which he applied or attempted to apply or that he was qualified for any such positions.

Defendants argue that Plaintiff fails to present evidence sufficient to create an issue of fact for the fourth element, that is, whether the circumstances of his discharge give rise to a reasonable inference of either age or disability discrimination.  As noted above, Plaintiff's R&D Engineering position was eliminated, as was his former Production Manager position, when Konecranes decided, in an effort to reduce costs, to transfer all R&D and production functions at the Charleston facility to Konecranes's Springfield, Ohio facility. Heeskens Dep. 19, 21-22, 58-60, 62; Wagner Decl. ¶¶ g-h.  Defendants argue that Plaintiff's belief that "Konecranes fundamentally restructured its business and laid off several employees just to discriminate against him" is absurd.  Def. Mem. 10. However, Plaintiff does not appear to argue so much that the elimination of his position was discriminatory, but rather it was Defendants' failure to place him into another position.

One of the ways a plaintiff can show circumstances giving rise to an inference of discrimination is if similarly-situated employees outside of the protected class were treated differently.  Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir.2002).  A total of four positions at the Charleston facility were eliminated.  Heeskins Dep. 21-22.  Plaintiff points to two younger, non-disabled employees who were retained in different positions.  Shawron Williams was an hourly, shop employee in Charleston, whose position was eliminated, but who was transferred to Springfield to "help assemble the hoists."  Heeskins Dep. 20; see also Emails re Shawron Williams (Ex. 10 to Pl. Resp.).  Heeskins does not recall how Williams got transferred.[7] Heeskins Dep. 20.  Defendants note that Williams was an hourly employee while Plaintiff earned over $100,000 per year.  Pl. Dep. 144.  Plaintiff acknowledged that Defendants would not have much to gain financially by terminating

_____

[7]Although Plaintiff cites an email chain as evidence that someone in human resources assisted Williams with his transfer, Defendants point out that the emails occurred in April of 2010, six months after the elimination of the positions in Charleston, and likely involve Williams' transfer from a temporary position to a permanent position in Springfield.  See Emails re Shawron Williams.

hourly employees because they were not highly compensated. Pl. Dep. 144. Scott Vogel, who took Plaintiff's place as Production Manager when Plaintiff was reassigned into the R&D Engineering position, was also retained even though the Production Manager position was eliminated. Vogel remained at the Charleston facility and was placed into the position of Sales Support Manager. Heeskins Dep. 39. Heeskins testified that Vogel was placed into it because he was at a lower pay grade than Plaintiff and the Sales Support Manager position was a lesser paying job than the position Plaintiff held. Heeskins Dep. 40.

Defendants argue that neither Williams nor Vogel were similarly situated to Plaintiff such that their retention over Plaintiff could give rise to an inference of discrimination because Williams was an hourly employee while Plaintiff was salaried, and Vogel was in a lower pay grade than Plaintiff. A plaintiff must show that the comparators are similarly situated in all relevant respects. Haywood v. Locke, 387 Fed.Appx. 355, 359 (4th Cir.2010). Although Plaintiff argues that Williams' retention with the company is evidence of discrimination, he does not explain how he is similarly situated with him. Salaried employees in managerial positions are not similarly situated to hourly employees in non-managerial positions. See, e.g., Beaver v. Rayonier, Inc., 200 F.3d 723, 728-29 (11th Cir. 1999); Holtz v. Jefferson Smurfit Corp., 408 F.Supp.2d 193, 207 (M.D.N.C. 2006). Therefore, Williams, an hourly shop employee, was not similarly situated with Plaintiff. The record provides little as to Vogel's qualifications, his supervisor, or the standards he was required to meet, all evidence of whether an individual was similarly situated to a plaintiff. It is undisputed that Vogel filled Plaintiff's position as Production Manager while Plaintiff was on his medical leave of absence and remained in the position upon Plaintiff's return because Plaintiff had accepted the new position of R&D Engineering Manager. Heeskens Dep. 38-39. It is also undisputed that Vogel was in a lower pay grade that Plaintiff and that the Production Manager position was also eliminated.

The fact that Vogel filled this other, lower pay-grade position is not sufficient to give rise to an inference of discrimination at the prima facie stage of the analysis.

### 2.    Retaliation

Plaintiff alleges that Defendants retaliated against him for taking medical leave in 2008 and for his letter dated November 11, 2009, in which he stated that he believed he was the victim of age and disability discrimination.  To state a claim of retaliation under the ADA[8], a plaintiff must satisfy three elements: (1) the plaintiff engaged in a protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action.  A Soc'y Without a Name v. Commonwealth of Va., 655 F.3d 342, 350 (4th Cir.2011).

With respect to Plaintiff's medical leave in 2008, Defendants do not dispute that Plaintiff engaged in protected activity or that he suffered an adverse employment action when he was terminated.  Rather, they argue that he fails to establish a causal connection between the two.   A causal connection can be established based on temporal proximity alone, that is, where the employer takes adverse employment action against an employee shortly after learning of the protected activity. Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir.1989). However, the passage of time tends to negate any inference of a causal connection. See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273–74, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (holding that temporal proximity must be "very close" to infer causality at prima facie case) (citing Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir.1997) (3 month period insufficient to prove causal connection); Hughes v. Derwinski, 967 F.2d 1168, 1174–1175 (7th Cir.1992) (4 month period insufficient)); Allen v. Fed Ex Corp., No. 1:09-cv-17, 2011 WL 1260225, *10 (M.D.N.C. Mar. 31, 2011) (ten-month period insufficient).

---

[8]Plaintiff appears to raise his retaliation claim under only the ADA.  See Am. Compl.

Plaintiff took medical leave for treatment of his colon cancer between July of 2008 and November 20, 2008. He was terminated from his employment on October 23, 2009, approximately eleven months after his return from medical leave. The timing of Plaintiff's termination with respect to his medical leave is insufficient to show a causal connection.[9] Plaintiff fails to show any other causal connection between his medical leave and his termination.

Plaintiff also argues that Defendants retaliated against him for the November 11, 2009, letter, in which he asserted that he felt Defendants had violated the ADA and ADEA. This letter came after his termination. Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to this claim. The ADA requires that a plaintiff first file a charge of discrimination with the EEOC and exhaust the EEOC's administrative process in order to file a civil action arising under the statute. 42 U.S.C. § 12117(a). A court should dismiss such a discrimination lawsuit if the plaintiff has not exhausted required administrative remedies before bringing suit. Chacko v. Patuxent Institution, 429 F.3d 505, 508–09 (4th Cir.2005). "Only those [] claims stated in the initial charge [filed with a federal or local human relations commission], those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained" in a subsequent lawsuit. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir.1996).[10] Plaintiff's charge of discrimination does not mention the November 11, 2009, letter, much less that Defendants retaliated against him because of the letter. Charge of

---

[9]Plaintiff argues in his response that he was moved from Production Manager to R&D Engineering Manager because of his medical leave, although he admits that he did not raise this in his EEOC charge of discrimination. Pl. Resp. 25-26. However, transfer to a new job assignment is not an adverse employment action absent any significant change in responsibilities or supervisory duties. James v. Booz–Allen & Hamilton, Inc., 368 F.3d 371, 376 (4th Cir.2004). Plaintiff has made no such showing.

[10]Evans is a Title VII case. However, the exhaustion requirements and filing procedures under the ADA are identical to those applicable to claims under Title VII. See 42 U.S.C. § 12117(a).

Discrimination (Ex. K to Def. Motion). Plaintiff argues that his claim would have been developed by a reasonable investigation of the original charge. However, the charge states that the latest date discrimination[11] took place was October 23, 2009, the date Plaintiff was terminated. Even a reasonable investigation of Plaintiff's charge would not have revealed that he was claiming that a failure to rehire him was the adverse employment action. Accordingly, Plaintiff failed to exhaust his administrative remedies with respect to his retaliation claim arising out of the November 11, 2009, letter.

As discussed above, Plaintiff fails to establish a prima facie case of discrimination or retaliation with respect to his medical leave and failed to exhaust his administrative remedies as to the remainder of his retaliation cause of action. Therefore, summary judgment is appropriate. However, even assuming Plaintiff has established a prima facie case of discrimination and retaliation and did properly exhaust his administrative remedies, for the reasons discussed below, he fails to show that the Defendants' legitimate, non-discriminatory or retaliatory reason for his termination was pretext for a discriminatory or retaliatory reason.

### C.     Legitimate, Non-Discriminatory or Retaliatory Reason

Upon establishing a prima facie case of discrimination or retaliation, the burden shifts to Defendants to produce a legitimate, non-discriminatory or retaliatory reason for the adverse employment action. The Defendants' burden of production is not onerous; rather, they must only "articulate some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir.1995). Because an

---

[11] "Discrimination" as used on the charge of discrimination form, encompasses retaliation, as evidenced by the question immediately preceding the "Date(s) Discrimination Took Place" question. It asks what the alleged discrimination is based upon and includes retaliation as one of the choices. See Charge of Discrimination.

employer's burden is one of production, and not of persuasion, it "is not required to prove [the] absence of a discriminatory motive, but merely articulate some legitimate reason for its action." EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir.1992) (quoting EEOC v. Western Electric Co. Inc., 713 F.2d 1011, 1014 (4th Cir.1983)). Defendants assert that Plaintiff's employment was terminated because, as a result of the economic downturn and in an effort to reduce costs, Konecranes transferred all Stahl-brand production and R&D work to an out-of-state facility, and Plaintiff's position was eliminated. However, as stated above, Plaintiff does not appear to argue that the elimination of his position was discriminatory, but that Defendants' failure to place him into another position was. An issue of fact exists as to what occurred during the meeting in which Heeskens and Wagner notified Plaintiff that his position was being eliminated. Plaintiff asserts that he told Heeskens and Wagner that "[he] would take a job anywhere in the U.S., [he] didn't care where, anywhere in the world, any place they had a spot for [him], Dubai, [he] didn't care." Pl. Dep. 133. Plaintiff asserts that Wagner's response was that the company did not have a position for him. Pl. Dep. 133-34. Neither Heeskens nor Wagner recall Plaintiff making this statement during the termination meeting. Heeskens Dep. 24-25; Wagner Decl. ¶ j. Nevertheless, for purposes of this motion, the court views the evidence in the light most favorable to Plaintiff. Defendants' reason for not placing Plaintiff in another position with the company is that neither Heeskens nor Wagner were aware of any other position nor did they have any way of knowing whether other positions were available. Heeskens Dep. 59-61; Wagner Decl. ¶ m. A lack of job openings, if believed by the jury, is a legitimate, non-discriminatory reason not to place an employee whose position has been eliminated into another position.

### D.    Pretext

As set forth above, once the defendant produces a legitimate, non-discriminatory reason for

the adverse employment action, the burden returns to the plaintiff to show that the reason given by the defendant is pretext for a discriminatory and/or retaliatory reason. Reeves, 530 U.S. at 143. Plaintiff can show pretext by demonstrating that Defendant's explanation is "unworthy of credence" or by "offer[ing] other forms of circumstantial evidence sufficiently probative of intentional discrimination." Dugan v. Albemarle County Sch. Bd., 293 F.3d 716, 721 (4th Cir.2002). A plaintiff need not produce any additional evidence of discrimination or retaliation distinct from the evidence supporting his prima facie case, so long as that evidence is sufficient. Id. at 148-49 (holding invalid the requirement that "a plaintiff must always introduce additional, independent evidence of discrimination" to survive summary judgment).

Plaintiff argues that Defendants' reason for not placing him in another position, that Heeskens and Wagner were unaware of any openings and had no way of knowing if there were any openings, is unworthy of credence. Plaintiff notes that the idea that a worldwide company that employs more than 11,000 people at 600 facilities in forty-eight countries would not have any job openings for someone as highly experienced and qualified as Plaintiff is absurd. Pl. Resp. 22, 24. Plaintiff points to several reasons why a genuine dispute of fact exists as to whether the reason given for failing to place him in another job was pretext for a discriminatory reason, including Tom Sothard's failure to respond to Plaintiff's counsel's letter dated November 11, 2009, in which he asserted, among other things, that Plaintiff "remain[ed] willing to accept a position with [Konecranes] or any of its affiliates anywhere in the world," Nov. 11, 2009, Letter (Ex. I to Def. Motion).[12] Plaintiff argues that this was an attempt to prevent Plaintiff from finding another employment opportunity with Konecranes.

---

[12]As set forth above, counsel for Plaintiff noted in the letter that Plaintiff was protected by the ADEA and the ADA and that counsel "believe[d] [Plaintiff] ha[d] been a victim of unlawful discrimination." Nov. 11, 2009, Letter.

Plaintiff also argues that Defendants attempted to hide their decision to prevent Plaintiff from finding other employment with Konecranes with misrepresentations to the EEOC and this court. On August 5, 2011, Kaleb J. Brankamp, a legal representative of Konecranes, wrote a letter to the EEOC regarding Plaintiff's charge against Defendants. Brankamp Letter (Ex. 5 to Pl. Resp.).  Brankamp represented to the EEOC that plaintiff "… after being told he was free to apply…indicated that he had no desire to apply for any other job with Konecranes." Id.  Plaintiff testified to the contrary, that he specifically told Wagner that he would take a job anywhere in the world. Pl. Dep. 133.  Further, Heeskens testified that Plaintiff did not say that he was not interested in a job somewhere else with Konecranes or Stahl.  Heeskens Dep. 25.  Plaintiff argues that a "factfinder is entitled to consider a party's dishonesty about a material fact as 'affirmative evidence of guilt.'" Reeves, 530 U.S. at 147 (quoting Wright v. West, 505 U.S. 277, 296, 112 S. Ct. 2482 (1992)).  However, the statement at issue here was not made by either Heeskens or Wagner, and Heeskens specifically testified that the statement, made by a legal representative for Konecranes who was not present during the termination meeting, was incorrect.  Thus, this statement, made by someone not involved in the decision-making process, is insufficient to create an issue of fact as to pretext.  See Deal v. Grubb, No. 7:08-cv-0575, 2010 WL 3418208, at *9 (W.D. Va. Aug. 30, 2010) ("The EEOC position statement was not written by [the decision-makers] or any other fact witness to the . . . process, and the court is convinced that the single, isolated error contained in the statement is not probative of pretext.") (citing Newsom v. Barnhart, 116 F.App'x 429, 433 (4th Cir.2004) (noting that even if there was an inconsistency, "there would be no reason to believe that such inconsistency reflects discriminatory intent")).

Finally, Plaintiff argues that Defendants' failure to preserve records of its job openings at the time of Plaintiff's discharge violates 29 C.F.R. § 1602.14, and, thus, Plaintiff is entitled to an adverse inference against Defendants that the reason given for failing to place Plaintiff in another job was

false. "Under the spoliation of evidence rule, an adverse inference may be drawn against a party who destroys relevant evidence." Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 155 (4th Cir. 1995). Section 1602.14 sets forth the obligation[13] for the preservation of records by an employer:

> Any personnel or employment record made or kept by an employer (including but not necessarily limited to requests for reasonable accommodation, application forms submitted by applicants and other records having to do with hiring, promotion, demotion, transfer, lay-off or termination, rates of pay or other terms of compensation, and selection for training or apprenticeship) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later. In the case of involuntary termination of an employee, the personnel records of the individual terminated shall be kept for a period of one year from the date of termination. Where a charge of discrimination has been filed, or an action brought by the Commission or the Attorney General, against an employer under title VII, the ADA, or GINA, the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action. The term "personnel records relevant to the charge," for example, would include personnel or employment records relating to the aggrieved person and to all other employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates for the same position as that for which the aggrieved person applied and was rejected.

29 C.F.R. § 1602.14.

Plaintiff argues that records regarding open positions of employment worldwide at the time of Plaintiff's termination are "personnel records relevant to the charge" and that Defendants did not save them. Pl. Resp. 18. Plaintiff does not specifically identify the types of records he seeks, but points to the testimony of Rule 30(b)(6) designee, Jennifer Dine, who stated that, at the time Plaintiff's position was eliminated, there was a global personnel system in place that contained information regarding all employees under the Konecranes umbrella globally, including their hire dates. Konecranes 30(b)(6) Dep. 54-55 (Ex. to Pl. Resp.). Defendants first argue that any such

---

[13]See Goodman v. Praxair Servs., Inc., 632 F.Supp.2d 494, 509 (D.Md.2009) (holding that to prove spoliation that warrants a sanction, a party must first show that "the party having control over the evidence had an obligation to preserve it when it was destroyed or altered").

records were not relevant to Plaintiff's claim.  However, Plaintiff notified Defendants as early as November 11, 2009, through counsel's letter to Tom Sothard, that he believed his termination was in violation of the ADEA and the ADA and that he remained willing to take another position with the company anywhere in the world.  Nov. 11, 2009, Letter.  Further, his charge of discrimination with the EEOC stated that Plaintiff "has sought to remain employed with the company, and he has specifically told management that he would be interested in [an] opportunity globally."  EEOC Charge of Discrimination (Ex. J to Def. Motion).

However, to warrant an adverse inference from the spoliation of evidence, a plaintiff must prove that the spoliator acted, at a minimum, willfully in the destruction of relevant evidence. Vodusek, 71 F.3d at 156.  "An adverse inference about a party's consciousness of the weakness of his case . . . cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction."  Id. (citing Nation–Wide Check Corp. v. Forest Hills Dist., Inc., 692 F.2d 214, 217-18 (1st Cir.1982)).  If a spoliator's conduct is merely negligent, therefore, the adverse inference instruction is not an appropriate sanction. Hodge v. Wal-Mart Stores, Inc., 360 F.3d 446, 450-51 (4th Cir.2004).

Here, Plaintiff has failed to show the destruction of any documents, much less any willfulness.  In fact, Plaintiff fails to show that any documents were actually destroyed.  During the discovery process, Plaintiff requested information regarding "any and all job openings or positions that were filled with any Stahl or Konecranes controlled entity globally between October 1, 2009 and December 31, 2010 with an offered salary of $70,000.00 or more."  See Def. Answers to Pl. Supp. Interrogs. No. 28 (Ex. L to Def. Motion). Defendants objected to this Interrogatory, and Plaintiff ultimately pursued a motion to compel on the issue.  See Motion to Compel (Document # 45).

-19-

During a hearing on the motion, the parties reached an agreement, and Defendants produced the agreed upon information, identifying one position in the United States, paying at least $70,000 annually, that was filled between October 1, 2009 and May 31, 2010. Def. Answers to Pl. Supp. Interrogs. No. 28. Although Defendants did not produce the originally requested information regarding job openings globally, the parties agreed to narrow the request to job openings in the United States. There is no evidence in the record that Defendants destroyed any relevant documents. Thus, Plaintiff is not entitled to an adverse inference regarding the truthfulness of Defendants' reason for not placing Plaintiff in another position when his current position was eliminated.

In sum, Plaintiff has failed to present sufficient evidence to show that the reason given for not placing him in another position following the elimination of his own is unworthy of credence, nor does he present any other evidence of discriminatory intent. "The very nature of a [reduction in force] is that some workers must be let go, and difficult decisions have to be made." Mereish v. Walker, 359 F.3d 330, 338–39 (4th Cir. 2004). "It is not for this court ... to direct the business practices of any company," EEOC v. Clay Printing Co., 955 F.2d 936, 946 (4th Cir.1992), nor "sit as a super-personnel department weighing the prudence of employment decisions made by the defendants." Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 272 (4th Cir.2005) (internal quotation marks and citations omitted). See also Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 512 (4th Cir.1994) ("In a reduction of work force case, the fact that the duties were assumed by a younger individual is not conclusive of age bias."). Plaintiff's argument in this case assumes that Defendants had an obligation to place him in another position following the elimination of his position. "Generally, an employer has no duty to an employee to transfer him to another position in the company when the employer reduces or restructures its workforce, and [Plaintiff] does not allege that the terms of his employment imposed any such duties on [Defendants] in this case."

<u>King v. Marriott Int'l, Inc.</u>, No. 9:05-1774-PMD-RSC, 2007 WL 951738, at *10 (D.S.C. Mar. 27, 2007), amended on reconsideration, 520 F. Supp. 2d 744 (D.S.C. 2007) (citing <u>Norbuta v. Loctite Corp.</u>, 1 Fed.App'x 305 (6th Cir.2001); <u>Ridenour v. Lawson Co.</u>, 791 F.2d 52, 57 (6th Cir.1986)). Plaintiff did not apply for any particular new position or for a particular transfer, but rather placed on Defendants the obligation to discover or locate a position in which he may have had an interest. Plaintiff fails to make a sufficient showing of conduct on the part of any decisionmaker of an attempt to cover-up or hide any open job position for which Plaintiff was qualified and would have applied. such that he has failed to create an issue of fact at either the prima facie or the pretext stage. At bottom, this is a discrimination case. The "'ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination.'" <u>Merritt v. Old Dominion Freight Line, Inc.</u>, 601 F.3d 289, 294–95 (4th Cir. 2010) (quoting <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 153 (2000)). The evidence in the record is insufficient to create a genuine dispute of fact as to whether Defendants discriminated or retaliated against Plaintiff because of his age or his disability. Accordingly, summary judgment is appropriate.

## V.     CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 81) be granted and this case be dismissed in its entirety.

 s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

January 31, 2017
Florence, South Carolina