**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| DANIEL MCFADDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:13-cv-03039-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| STAHL CRANE SYSTEMS, INC., | ) | |
| and KONECRANES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on Magistrate Judge Thomas E. Rogers, III's

Report and Recommendation (the "R&R"), ECF No. 99, recommending that the court

grant defendants Stahl Crane Systems, Inc. and Konecranes, Inc.'s (collectively,

"defendants") motion for summary judgment.  ECF No. 81.  Plaintiff Daniel

McFadden ("McFadden") filed objections to the R&R.  ECF No. 102.  For the

reasons set forth below, the court adopts in part and rejects in part the R&R, and

grants in part and denies in part defendants' motion for summary judgment.

## I.  BACKGROUND

Defendants own and operate an enterprise engaged in the manufacture of wire

rope and chain hoists used on cranes and other heavy lifting equipment in the

manufacturing industy, shipyards, ports, and terminals.  ECF No. 81-1, Defs.' Mot. 2.

McFadden began working for defendant Stahl Crane Systems, Inc.'s ("Stahl") as a

"Production Manager" at its Charleston, South Carolina location in 2002.[1]  ECF No.

---

[1] Technically, McFadden first worked for Stahl's predecessor, Crane Systems,
Inc.  Defs.' Mot. 2.  Crane Systems, Inc. was acquired by KCI Holding USA, Inc.
("KCI") in 2005, which appears to be a subsidiary of defendant Konecranes, Inc.

1

81-2, McFadden Dep. 29:22–25. As a Production Manager, McFadden performed primarily sales and supply-chain management related functions, such as "mak[ing] production schedules to meet promised deliveries," "mak[ing] sure [] the components necessary to complete the equipment [were] available and on hand," "keep[ing] current purchase agreements in place and constantly trying to get better pricing and delivery," improving the product "through discussions and meetings with customers," and participating in "sales calls" and "sales meetings." McFadden Dep. 57:23–58:21. McFadden was also qualified to perform engineering and managerial functions. ECF No. 82-12, Heeskins Dep. 37:16–19.

In December of 2004, McFadden was diagnosed with colon cancer. He underwent surgery and treatment while continuing to work in his position as Production Manager. Following this treatment, McFadden's cancer went into remission. In July of 2008, McFadden learned his colon cancer had returned. Faced with the prospect of again undergoing surgery and treatment, McFadden requested and was granted a leave of absence from his job with Stahl. ECF Nos. 82-6. Stahl placed McFadden on short term disability while he was on leave. McFadden Dep. 72:22–25; ECF No. 82-7, Letter re: Medical Leave of Absence. In September or October of 2008, while McFadden was still on leave, his supervisor, Robby Heeskens ("Heeskens"), offered him a newly created position as a Research and Development Engineering Manager ("R&D Manager"). McFadden Dep. 116:10–17, 118:1–15. The position required McFadden to "Americanize" defendants' products, which were

---

("Konecranes"). ECF No. 81-4, Wagner Aff. ¶ C. Because the parties seem to understand that Stahl is controlled by Konecranes, the court finds it unnecessary to identify the precise nature of Konecranes and Stahl's relationship.

developed in Germany.  Heeskens Dep. 48:1–12.  McFadden specifically asked Heeskens whether the position would be phased out, and expressed his desire to remain in a permanent position with the company.  McFadden Dep. 117:11–118:15. Heeskens assured McFadden that the position would not be phased out, and that Stahl's managing director, Warren Wagner ("Wagner"), supported the position.  Id. at 117:11–20.  McFadden accepted the R&D Manager position and returned to work in that role on November 20, 2008.  Id. at 126:10–24.  McFadden's old Production Manager position was filled by Scott Vogel ("Vogel"), a younger employee who had been covering McFadden's duties during his leave of absence.  Heeskens Dep. 38:1–39:5.  Notably, the R&D Manager position provided McFadden with the same pay and benefits he received as a Production Manager.  McFadden Dep. 126:19–24.

In 2009, due to the "worldwide economic downturn," Konecranes underwent significant internal restructuring.  Wagner Aff. ¶ D.  As part of this restructuring, Konecranes decided to eliminate all production operations at Stahl's Charleston facility, leaving only the sales office.  Id. ¶ F.  All of Stahl's production operations were moved to a larger facility in Springfield, Ohio and a number of positions— including the R&D Manager position—were eliminated.  Id. ¶ H.  Konecranes avers that "[t]he sole reason for the elimination of these positions was to reduce costs because of the worldwide economic crisis."  Id. ¶ I.

McFadden was terminated on October 23, 2009.  McFadden Dep. 129:25–130:2.  Heeskens and Wagner met with McFadden to tell him that his position was being eliminated.  Id. at 130:3–7.  After being informed of his termination, McFadden told Heeskens and Wagner that "[he] would take a job anywhere in the U.S., [he]

didn't care where, anywhere in the world, anyplace they had a spot for [him], Dubai, [he] didn't care." Id. at 133:2–5. Wagner responded that "[t]hey had nothing." Id. at 133:5–6. On November 11, 2009, McFadden's attorney, Allan Holmes ("Holmes"), sent a letter to KCI's president, Tom Sothard ("Sothard"), informing Sothard that he believed McFadden had been the victim of unlawful discrimination, seeking information justifying defendants' decision to terminate McFadden's employment, and informing Sothard that McFadden "remain[ed] willing to accept a position with your company or any of its affiliates anywhere in the world." ECF No. 81-11, Holmes Letter 2. Defendants did not respond to the Holmes Letter.

McFadden filed a charge of discrimination with both the South Carolina Human Affairs Commission and the Equal Employment Opportunity Commission ("EEOC"), and received notice of his right to sue on August 22, 2013. McFadden filed the instant action on November 7, 2013. ECF No. 1. McFadden claims that defendants have unlawfully discriminated against him based on his advanced age and his disability—cancer—in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 623 ("ADEA") and the Americans with Disabilities Act, 42 U.S.C §§ 126, et seq. ("ADA"), respectively. ECF No. 74, Am. Compl. ¶¶ 27, 28.[2] McFadden also alleges that he was subjected to unlawful retaliation under the ADA for his use of medical leave to treat his disability and for the Holmes Letter. Id. ¶ 28.

Defendants filed the instant motion for summary judgment on April 29, 2016. ECF No. 81. McFadden filed a response on May 16, 2016, ECF No. 82, and defendants filed a reply on May 26, 2016. ECF No. 84. McFadden filed a sur-reply

_____

[2] The twenty-eighth paragraph of McFadden's amended complaint is labeled paragraph "24." It is clearly meant to be "28."

on June 2, 2016.[3]  ECF No. 86.  The magistrate judge issued the R&R on January 31, 2017, recommending the court grant defendants' summary judgment on all of McFadden's claims.  ECF No. 99.  McFadden filed objections to the R&R on February 14, 2017, ECF No. 102, and defendants filed a reply on February 28, 2017.  ECF No. 103.  McFadden filed a motion for leave to file a sur-reply—with a proposed sur-reply attached—on March 7, 2017.  ECF No. 104.  The matter is now ripe for the court's review.

## II.  STANDARD

### A.    De Novo Review

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. 636(b)(1).  The court may adopt the portions of the R&R to which the petitioner did not object, as a party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  Thomas v. Arn, 474 U.S. 140, 14–50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and it is this court's responsibility to make a final determination.  Mathews v. Weber, 423 U.S. 261, 270–71 (1976).

### B.    Summary Judgment

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

---

[3] Technically, McFadden filed a motion for leave to file a sur-reply on June 2, 2016, but the magistrate judge granted his motion on the same day he issued the R&R.  Thus, it appears the magistrate judge considered the arguments contained in the proposed sur-reply attached to the June 2, 2016 motion.

Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  When the party moving for summary judgment does not bear the ultimate burden of persuasion at trial, it may discharge its burden by demonstrating to the court that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-movant must then "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Anderson, 477 U.S. at 255.

### III.  DISCUSSION

**A.    ADEA and ADA Discrimination Claims**

McFadden argues that defendants discriminated against him based on his age

and disability in violation of the ADA and ADEA when they terminated his

employment and frustrated his ability to seek further employment with the company.[4]

"The ADEA makes it unlawful for any employer:  'to discharge any

individual or otherwise discriminate against any individual with respect to his

compensation, terms, conditions, or privileges of employment, because of such

individual's age.'"  McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 355

(1995) (quoting 29 U.S.C. § 623(a)(1)).  Similarly, the ADA provides that "[n]o

covered entity shall discriminate against a qualified individual on the basis of

disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment."  42 U.S.C. § 12112(a).

A plaintiff may prove ADEA and ADA discrimination claims in two ways:

(1) through direct proof, or (2) through circumstantial evidence, using the burden-

shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973).  See Smith v. Strayer Univ. Corp., 79 F. Supp. 3d 591, 598 (E.D. Va. 2015)

("In the employment discrimination context, including under the ADA, to avoid

summary judgment in defendant's favor, a plaintiff must either produce direct or

circumstantial evidence of defendant's discriminatory motivations, or proceed under

---

[4] Given the general lack of attention that has been paid to the precise
relationships between the various entities at issue in this case, the court uses the term
"the company" to refer to any and all Konecrane controlled-entities.

the two-step "pretext" framework set forth in [McDonnell Douglas]."); Malina v.

Baltimore Gas & Elec. Co., 18 F. Supp. 2d 596, 604–05 (D. Md. 1998) ("The Fourth

Circuit has long held that an employee may prove age discrimination in two ways:

under ordinary principles of proof using direct evidence relevant to and probative of

that issue; or under the McDonnell Douglas circumstantial proof paradigm used in

Title VII cases.").  In this case, the parties proceed under the McDonnell Douglas

framework.

     The Fourth Circuit has explained the McDonnell Douglas framework as

follows:

> [T]he plaintiff has the initial burden of proving a prima facie case of
> discrimination by a preponderance of the evidence. If the plaintiff
> succeeds in proving the prima facie case, the burden shifts to the
> defendant to articulate some legitimate, nondiscriminatory explanation
> which, if believed by the trier of fact, would support a finding that
> unlawful discrimination was not the cause of the employment action.
> If the defendant meets this burden of production, the presumption
> created by the prima facie case "drops out of the picture," and the
> plaintiff bears the ultimate burden of proving that she has been the
> victim of intentional discrimination.

Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995), as

amended (June 9, 1995), as amended (Mar. 14, 2008).

### 1.    Prima Facie Showing

     The magistrate judge found that McFadden failed to establish a prima facie

case of discrimination under either the ADEA or the ADA because he has not shown

that "the circumstances of his discharge give rise to a reasonable inference of either

age or disability discrimination."  R&R at 10–12.  The court disagrees and finds that,

when the evidence is viewed in the light most favorable to McFadden, a reasonable

juror could infer intentional discrimination.

It is important to emphasize the permissive nature of the <u>prima facie</u> test.  <u>See</u> <u>Young v. Lehman</u>, 748 F.2d 194, 197 (4th Cir. 1984) (recognizing that "the burden of establishing a <u>prima facie</u> case is not a heavy one"); <u>Lockley v. Town of Berwyn</u> <u>Heights</u>, 2015 WL 5334256, at *5 (D. Md. Sept. 11, 2015) ("The threshold plaintiffs must meet to establish a prima facie case is low, and doing so is 'relatively easy.'" (internal citation omitted) (quoting <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 960 (4th Cir. 1996))).  "[A] plaintiff establishes a <u>prima facie</u> case by proving a set of facts which would enable the fact-finder to conclude, in the absence of any further explanation, that it is more likely than not that the adverse employment action was the product of discrimination."  <u>Ennis</u>, 53 F.3d at 58.

To establish a <u>prima facie</u> case of wrongful discharge under the ADEA, McFadden must show:  "(1) he was in the age group protected by the ADEA; (2) he was discharged or demoted; (3) at the time of his discharge [], he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful age discrimination."  <u>Halperin v. Abacus Tech. Corp.</u>, 128 F.3d 191, 201 (4th Cir. 1997) <u>abrogated on other grounds by</u> <u>Baird ex rel. Baird v. Rose</u>, 192 F.3d 462, 469 n.8 (4th Cir. 1999).  McFadden's ADA discrimination claim requires him to show that "(1) he [was] within the ADA's protected class; (2) he was discharged; (3) at the time of his discharge, he was performing the job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination."  <u>Haulbrook v. Michelin N. Am.</u>, 252 F.3d 696, 702 (4th Cir. 2001).  Thus, the <u>prima facie</u> cases required for the

ADEA and ADA claims are essentially the same, except that each claim addresses a different type of discrimination—age-based discrimination and disability-based discrimination, respectively.

The only element in dispute for either claim is whether McFadden has made a prima facie showing that the circumstances surrounding his discharge raise a reasonable inference of discrimination.  R&R at 10.  Before turning to the merits of this argument, it is useful to consider the broader context.  As the magistrate judge recognized, it is somewhat inaccurate to characterize McFadden's claim as a claim for wrongful discharge.  R&R at 9–10.  McFadden does not contend that defendants' decision to do away with the R&D Manager position was motivated by discriminatory intent.  Instead, he contends that defendants discriminated against him by preventing him from applying elsewhere in the company.  Pl.'s Objections at 9–10.  At least one court has analyzed this sort of claim under a "failure-to-hire" or "failure-to-promote" framework, requiring the plaintiff to show that the defendant actually had an open position for which the plaintiff was qualified, and that the plaintiff was rejected for, or prevented from applying to, that position.  See Janey v. N. Hess Sons, Inc., 268 F. Supp. 2d 616, 623–24 (D. Md. 2003) (addressing prima facie elements of claim for failure to "transfer" plaintiff to a new job after employer went out of business).  McFadden's claims would likely fail under this framework, given that he has not identified any opening that he was qualified to fill but prevented from applying to by defendants' discriminatory actions.[5]

_____

[5] There is very little, if any, evidence that defendants actually had any open positions at the relevant time.  However, because the court analyzes McFadden's claims under a somewhat different theory of the case, the court finds it unnecessary to

Nevertheless, the court thinks it inappropriate to fixate on whether McFadden's claim fits with a particular set of <u>prima facie</u> elements.  The Fourth Circuit has recognized that the <u>McDonnell Douglas</u> framework is a means, not an end, and the court should not lose focus of "'the ultimate question—whether the plaintiff successfully demonstrated that the defendant intentionally discriminated against [him].'"  <u>Halperin</u>, 128 F.3d at 197 n. 7 (quoting <u>Ennis</u>, 53 F.3d at 59); <u>Henson v. Liggett Grp., Inc.</u>, 61 F.3d 270, 275 (4th Cir. 1995) ("Despite the 'minutiae of the various proof schemes set forth in <u>McDonnell Douglas</u>,' . . . the 'straightforward' question to be answered in discrimination cases is whether the plaintiff has successfully demonstrated that she was the victim of age discrimination on the part of the employer." (quoting <u>Birkbeck v. Marvel Lighting Corp.</u>, 30 F.3d 507, 511 (4th Cir. 1994))).  The court finds—and the parties do not dispute—that an employer may not intentionally interfere with a plaintiff's attempt to find another position based on the plaintiff's age or disability.  If an employer engages in such obstruction during an organizational restructuring, it could indicate that the employee's discharge was motivated by a discriminatory purpose.  <u>See</u> <u>Montana v. First Fed. Sav. & Loan Ass'n of Rochester</u>, 869 F.2d 100, 105 (2d Cir. 1989) (finding that discharge occurred in "circumstances giving rise to an inference of age discrimination" where plaintiff was terminated as part of an organizational restructuring, the bulk of her responsibilities were transferred to positions filled by younger employees, and she was not offered the position filled by either of the younger employees).  Thus, the court will analyze whether the circumstances of this

---

determine whether there is sufficient evidence of any open positions to survive summary judgment.

case support a reasonable inference that defendants' treatment of McFadden was motivated by his age or disability.

The court finds that McFadden has made a prima facie showing on this issue. Viewing the evidence in the light most favorable to McFadden, the record shows that while he was terminated, Vogel—the younger, non-disabled employee who replaced McFadden as Production Manager—was retained as a "Sales Support Manager." Heeskens Dep. 39:6–40:1. Significantly, the Sales Support Manager title did not bring any substantive change in Vogel's responsibilities. Heeskens Dep. 70:15–17. Thus, the R&D Manager position was made obsolete by the restructuring—the very fear McFadden expressed to Heeskens when he was offered the position—while the Production Manager position was effectively preserved, albeit under a different name. The fact that McFadden was not considered for his old Production Manager position is enough to give rise to a reasonable inference of discrimination. See Montana, 869 F.2d at 105 (finding prima facie case where plaintiff's responsibilities transferred to younger employees and plaintiff was not given the opportunity to apply for younger employees' positions). The court acknowledges that Vogel was already in the Production Manager position at the time of the restructuring, so McFadden was not technically replaced by a younger, non-disabled employee. But in the unique circumstances of this case—where McFadden expressed concerns about the permanence of the R&D Manager position; only a year had passed since he held the Production Manager position, which was effectively retained by the company; and he expressed a strong desire to remain with the company—it seems clear that defendants were presented with a choice between Vogel and McFadden.

Defendants argue that Vogel cannot be compared to McFadden because Vogel occupied a lower pay grade.[6] Heeskens Dep. 39:17–40:20. But courts have been willing to overlook differences in pay when drawing an inference of discrimination from an employer's preferential treatment of a non-protected employee. See Montana, 869 F.2d at 105 (finding prima facie case of discrimination where plaintiff's position was eliminated and duties were farmed out to younger, lower-paid employees); Rosenow v. CareCore Nat., LLC, No. 9:10-cv-1592, 2012 WL 1802456, at *5 (D.S.C. May 17, 2012) (finding prima facie case of discrimination where plaintiff's position was eliminated and replaced by substitute position that carried somewhat different duties and paid 50% less). Thus, the court does not find McFadden and Vogel's difference in pay significant enough to disturb McFadden's prima facie showing of discrimination. Ultimately, there is evidence that the defendants recognized that they had a clear choice between McFadden and Vogel, and that Vogel was ultimately chosen. The court finds that a reasonable juror could infer that defendants selected Vogel based on his age and lack of disability.

Before turning to the next stage of the analysis, the court pauses to note that McFadden advanced a number of other arguments at the prima facie showing stage. Specifically, McFadden highlighted (1) his testimony that defendants told him there

---

[6] McFadden has testified that his pay did not change when he moved from the Production Manager position to the R&D Manager position. McFadden Dep. 126:19–24. Thus, the difference in McFadden and Vogel's pay could have been a reflection of McFadden's experience or some other similar factor, but it is difficult to see how it was a reflection of their different positions. If McFadden earned the same salary as a Production Manager that he earned as an R&D Manager, the obvious implication is that the positions carry equal status. Thus, at the summary judgment stage, the court must reject Heeskens's claim that the positions had different pay grades. Heeskens Dep. 39:17–40:20 (likening McFadden to a "general manager" and Vogel to a "sweeper").

was "nothing available for him" at the company, despite his willingness to relocate; (2) defendants' refusal to respond to the Holmes Letter or investigate claims of discrimination made therein; and (3) false statements contained in defendants' letter to the EEOC (the "EEOC Letter").  Pl.'s Objections 13.  The court need not decide whether such evidence would support a prima facie case, but wishes to point out that much of this evidence is geared toward a different theory of the case than what has been outlined above.  Though McFadden has certainly presented enough evidence to raise defendants' preferential treatment of Vogel as a potential basis for his claim, see Pl.'s Objection 15 (discussing disparate treatment of McFadden and Vogel),[7] the main thrust of McFadden's argument focuses on defendants' alleged efforts to prohibit him from applying to open positions elsewhere in the company—as opposed to the Sales Support Manager position filled by Vogel.  Id. at 9–10.  Because the court ultimately finds that McFadden's discrimination claims survive summary judgment, it need not trudge through the multitude of problems posed by this theory of the case.  The court simply wishes to point out that it approaches this case from a somewhat different perspective than the parties and the magistrate judge, in an effort to give some context to the following analysis.

### 2.     Legitimate, Nondiscriminatory Explanation

Having determined that McFadden met his initial burden to present a prima facie case of discrimination, the burden shifts to defendants to present a legitimate,

---

[7] The court also finds that this theory of the case falls within the scope of McFadden's amended complaint as well as McFadden's EEOC charge.  See Am. Compl. ¶¶ 17, 21 (noting that the Production Manager position was filled by "a much younger person" and that McFadden was told "there was nothing available for him anywhere in the company" when he was terminated); ECF No. 81-12, EEOC Charge (same).

nondiscriminatory reason for their decision to terminate McFadden. A defendant may satisfy this burden by "merely articulating" a nondiscriminatory reason for its actions. Gillins v. Berkeley Elec. Co-op., Inc., 148 F.3d 413, 416 (4th Cir. 1998). A defendant need only offer "some legitimate, nondiscriminatory explanation which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." Ennis, 53 F.3d at 58.

Defendants argue that McFadden's position was eliminated as part of the company's internal restructuring. Defs.' Mot. 12–13. Defendants explain that "as a result of the economic downturn and in an effort to reduce costs, Konecranes transferred all Stahl-brand production and [research and development] work to an out-of-state facility, and [McFadden's] position was eliminated." Id. While this is undoubtedly a nondiscriminatory motive, it is an incomplete explanation. The fact that the R&D Manager position was eliminated does not explain why defendants did not allow McFadden to apply for the Sales Support Manager position.[8] However, a more thorough explanation can be found in the EEOC Letter, which stated that McFadden was terminated because the R&D Manager position and his old Production

---

[8] To the extent defendants might argue that the court's shift in focus has prejudiced their ability to present a nondiscriminatory explanation sufficient to withstand the pretext arguments discussed in part III.A.3. below, the court notes the nondiscriminatory explanation offered in defendants' briefing was equally non-responsive to McFadden's primary argument. See R&R at 15 ("Defendants assert that [McFadden's] employment was terminated because, as a result of the economic downturn and in an effort to reduce costs, Konecranes transferred all Stahl-brand production and [research and development] work to an out-of-state facility, and [McFadden's] position was eliminated. However, as stated above, [McFadden] does not appear to argue that the elimination of his position was discriminatory, but that [d]efendants' failure to place him into another position was."). This is why the magistrate judge had to look beyond defendants' proffered explanation to resolve the issue. See id. (analyzing Heeskens's testimony and Wagner's declaration to find an explanation for why McFadden was not placed in another open position).

Manager position were eliminated, and the "new" Sales Support Manager position

required skills that McFadden did not have.  ECF No. 82-5, Letter to EEOC at 2.  At

the risk of foreshadowing, the court notes that this is not consistent with other

evidence in the record, but because the <u>McDonnell Douglas</u> framework simply asks

defendant to "articulate" a nondiscriminatory basis for its decision, the court finds

that defendant has satisfied its obligation.[9]

### 3.  Pretext and Intentional Discrimination

Because defendants have offered a legitimate, nondiscriminatory explanation

for their decision, the <u>McDonnell Douglas</u> framework falls away and the plaintiff is

left with the ultimate burden of showing intentional discrimination.  <u>Reeves v.

Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133, 143 (2000).  A plaintiff may show

intentional discrimination by proving, by a preponderance of evidence, that "'the

legitimate reasons offered by the defendant were not its true reasons, but were a

pretext for discrimination.'"  <u>Id.</u> (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine,</u>

---

[9] The R&R, focusing on McFadden's argument that defendants prohibited him
from applying to other open positions, also looked past defendants' restructuring
explanation and identified evidence in the record that Wagner and Heeskens did not
know of any other positions available in the company when they terminated
McFadden.  R&R at 15.  McFadden argued that the magistrate judge erred by failing
to recognize evidence undermining this explanation.  Pl.'s Objections 20–21.
Because McFadden's evidence-based objection would be equally applicable to the
analysis set forth above, the court takes this opportunity to clarify that the <u>McDonnell
Douglas</u> framework does not task the defendant with <u>proving</u> that it actually relied the
nondiscriminatory motive that it offers.  The defendant must simply "articulate" a
nondiscriminatory basis for its decision.  <u>Gillins</u>, 148 F.3d at 416.  It is the <u>plaintiff</u>
who must show, by the preponderance of the evidence, that the defendant did not
actually rely on the nondiscriminatory explanation it offered.  <u>Id.</u> ("The burden then
shifts back to [the plaintiff] to demonstrate that [the defendant's] stated reason was
merely pretextual and that it was motivated, in fact, by a discriminatory purpose.").
Any argument that the court must credit evidence contradicting the defendants'
explanation at this stage of the analysis is simply misplaced.

450 U.S. 248, 253 (1981)).  In making this showing, a plaintiff may rely on the same

evidence used to establish the prima facie case and any inferences that may be drawn

therefrom.  Id.  A plaintiff may also rely on "a party's dishonesty about a material fact

as 'affirmative evidence of guilt.'"  Id. at 147 (quoting Wright v. West, 505 U.S. 277,

296 (1992)).  Where an employer offers a false explanation of its actions, it is

reasonable to infer that the employer is attempting to "cover up a discriminatory

purpose."  Id.  "Thus, a plaintiff's prima facie case, combined with sufficient

evidence to find that the employer's asserted justification is false, may permit the trier

of fact to conclude that the employer unlawfully discriminated."  Id.

        As discussed in part III.A.1. above, there is evidence that defendants moved

McFadden into the R&D Manager position with the assurance that the position would

not be eliminated.  McFadden Dep. 117:11–118:15.  When the financial crisis forced

defendants to go back on this promise, they did not give McFadden an opportunity to

move back into his old position, or even reapply for it.  Heeskens Dep. 53:13–16

(stating that McFadden was not considered for the Sales Support Manager position).

Instead, they allowed Vogel, McFadden's younger, non-disabled replacement, to keep

the position under a different title.  Id. at 39:6–40:1.  None of this conduct would be

objectionable if defendants were motivated by nondiscriminatory considerations.  An

employer is certainly under no obligation to ensure that all protected employees are

shielded from the boom and bust of the marketplace.  King v. Marriott Int'l, Inc., No.

9:05-cv-1774, 2007 WL 951738, at *10 (D.S.C. Mar. 27, 2007) ("Generally, an

employer has no duty to an employee to transfer him to another position in the

company when the employer reduces or restructures its workforce."), amended on

17

other grounds, 520 F. Supp. 2d 744 (D.S.C. 2007).  But an employer is not allowed to

decide who it retains based on age or disability.  Cf. Birkbeck v. Marvel Lighting

Corp., 30 F.3d 507, 511 (4th Cir. 1994) (recognizing need to distinguish between

layoffs caused by economic conditions and "discharge of employees based on age").

In this case, a reasonable juror could find that defendants were motivated to

keep Vogel, rather than McFadden, due to McFadden's age and disability.  As an

initial matter, the fact that defendants did not even consider McFadden for the Sales

Support Manager position is somewhat suspicious.  There is ample evidence that

McFadden was just as qualified as Vogel,[10] if not more, given that the Sales Support

Manager position was effectively identical to the old Production Manager position,

which McFadden held for over five years before Vogel took over in his absence.

Heeskens Dep. 38:22–24, 70:15–18 (acknowledging that Vogel took over the

Production Manager position while McFadden was on leave, and stating that the

Sales Support Manager position was not "new," it was "just renamed, because

[Vogel] was already there").[11]  There is also evidence that McFadden expressed a

strong desire to stay with the company, even offering to relocate anywhere in the

world.  McFadden Dep. 133:2–5.  If McFadden was willing to go half way around the

world to work for Stahl, defendants must have realized he would have jumped at the

---

[10] Heeskens admits that McFadden was qualified for the job.  Heeskens Dep. 40:16–20.

[11] Heeskens described the Sales Support Manager's duties as follows: "supporting sales with technical questions."  Heeskens Dep. 39:4–5.  This brief description overlaps with a number of the duties McFadden performed as Production Manager—"do[ing] product improvement through discussions and meetings with customers[,] try[ing] to improve sales by going on sales calls with salesmen, [and] training the salesmen at the sales meetings on new product developments . . . ." McFadden Dep. 58: 12–16.

opportunity to apply for his old position.  Under these circumstances, it is reasonable to infer that McFadden's age and disability played a factor in defendants' decision to retain Vogel over McFadden.

Of course, there are a number of other factors that could have motivated that decision.  The fact that a non-protected employee receives more favorable treatment than a protected employee is not, in and of itself, conclusive evidence of discrimination.  Birkbeck, 30 F.3d at 512 ("In a reduction of work force case, the fact that the duties of a terminated older employee were assumed by a younger individual is not conclusive of age bias.").  But in this case there is more.  While the court finds that defendants have articulated a nondiscriminatory explanation for their decision, that explanation is not very convincing.  In their letter to the EEOC, defendants explained that the R&D Manager and Production Manager positions were eliminated by the restructuring, and that Vogel was retained as Sales Support Manager due to his superior sales experience and customer relation skills.  EEOC Letter at 2.  Defendants actually repeated this position in their Local Rule 26.03 interrogatory responses.  ECF No. 13.  However, this explanation is inconsistent with Heeskens's testimony in at least two ways.

First, Heeskens's testimony repeatedly indicated that the Sales Support Manager position was not materially different from the Production Manager position. At one point, Heeskens explained that Vogel was not offered a "new" position, his position was simply "renamed."  Heeskens Dep. 70:15–18.  Similarly, when asked about whether Vogel was "put in a job called sales support management," Heeskens responded that he "might have given [Vogel] that title, but [he did not] recall."  Id. at

39:6–12.  Heeskens later likened McFadden to a "general manager" and Vogel to a "sweeper," and claimed that McFadden was not retained over Vogel for the same reasons one would keep a "sweeper" after terminating a "general manager."  Id. at 39:17–40:20.  All of these statements indicate that Vogel was retained in a position that was materially identical to the one he had before the restructuring—i.e. the Production Manager position that McFadden performed for the better part of five years.  Such testimony not only conflicts with defendants' prior assertion that the Production Manager position was "eliminated" and that the Sales Support Manager position was "new," EEOC Letter at 2, it also undermines the logic of defendants' explanation for why Vogel was chosen to fill the Sales Support Manager position.  If the Production Manager and Sales Support Manager positions were not materially different, McFadden would have necessarily acquired the experience and skillset needed to perform the Sales Support Manager position during the five years he held the Production Manager position.  Thus, there is little reason to believe that Vogel's prior sales experience and customer relation skills were significant factors in defendants' decision to retain him over McFadden.

Second, Heeskens's testimony offered an entirely different explanation of why McFadden was not considered for the Sales Support Manager position.  According to Heeskens, Vogel was retained and McFadden was let go because they occupied different pay grades.  Heeskens Dep. 39:13–40:15.  Heeskens never suggested that the decision was based on Vogel's superior qualifications.  In fact, Heeskens explicitly stated that McFadden would have been qualified for the Sales Support Manager position.  Id. at 40:19–20.  Thus, defendants have offered two conflicting

stories—the EEOC Letter stated that Vogel was retained based on his superior

qualifications, while Heeskens claimed that it was purely a question of salary.  Either

explanation would be nondiscriminatory, but defendants' inability to keep their story

straight provides evidence of pretext.  Dennis v. Columbia Colleton Med. Ctr., Inc.,

290 F.3d 639, 647 (4th Cir. 2002) ("The fact that an employer has offered

inconsistent post-hoc explanations for its employment decisions is probative of

pretext.").  While the Fourth Circuit has overlooked an employer's inconsistent

explanations for its actions where the inconsistency has its own legitimate

explanation, see Holland v. Washington Homes, Inc., 487 F.3d 208, 216 (4th Cir.

2007) (finding inconsistency between employer's stated reason for terminating

plaintiff and the reason reported to state employment agency was evidence of "charity

on the company's part"—not pretext—where employer presented evidence that the

inaccurate report was intended to allow plaintiff to access retirement and

unemployment benefits), defendants have offered no such explanation here.

  The magistrate judge found that the inaccuracies contained in the EEOC

Letter were not evidence of pretext.  R&R at 17.  Relying on Deal v. Grubb, 2010

WL 3418208, at *9 (W.D. Va. Aug. 30, 2010), the magistrate judge held that because

the EEOC Letter was written by Konecranes's attorney, who was not involved in the

decision to terminate McFadden, it did not support an inference of discriminatory

intent.  However, the court finds Deal distinguishable.  To the extent the magistrate

judge reads Deal to suggest that inconsistencies between representations made by an

employer's legal representative and representations made by the actual "decision-

makers" cannot provide evidence of pretext, the court must disagree.  The Fourth

Circuit has recognized that such inconsistencies may support a finding of pretext.

E.E.O.C. v. Sears Roebuck & Co., 243 F.3d 846, 852–53 (4th Cir. 2001) (finding that

"the fact that Sears has offered different justifications at different times for its failure

to hire Santana is, in and of itself, probative of pretext," where decision-maker's

testimony offered a different explanation for refusal to hire plaintiff than the

defendant's EEOC position statement).  Thus, the fact that the EEOC Letter was not

written by the actual "decision-makers" is not dispositive.

The court suspects that the magistrate judge was primarily relying on the Deal

court's finding that a "single, isolated error" in an EEOC position statement was

insufficient to support a finding of pretext.  Deal, 2010 WL 3418208, at *9.

However, the court finds that the misrepresentations contained in the EEOC Letter

were neither single nor isolated.  The EEOC Letter characterized the Sales Support

Manager position as "new" and claimed that Vogel was offered the position based on

his "prior sales experience and customer relation skills."  EEOC Letter at 2.  As

explained above, both of these statements are inconsistent with Heeskens's testimony.

The claim that Vogel was offered the position based on his qualifications was also

repeated in defendants Local Rule 26.03 interrogatories.  ECF No. 13.  Thus, the

inaccurate representations in this case are more numerous and more pervasive than

the "single, isolated error" identified in Deal.[12]

---

[12] In fairness to the magistrate judge, because the parties focused their
arguments on the availability of open positions throughout the company, the
magistrate judge focused his analysis on a different inaccuracy in the EEOC letter—
the claim that, "after being told he was free to apply for any other job opening with
Konecranes, [McFadden] indicated that he had no desire to apply for any other job
with Konecranes."  Letter to EEOC at 2.  While the magistrate judge recognized that
this statement was inconsistent with both McFadden and Heeskens's testimony, he

Ultimately, when the facts are viewed in the light most favorable to the McFadden, a reasonable juror could that defendants offered an explanation for their actions that conflicted with the record and defendants' own subsequent explanations. When this evidence is combined with the fact that defendants terminated McFadden under circumstances that suggest his age and disability may have played a role in the decision, a reasonable juror could find that McFadden was the victim of intentional discrimination.  Reeves, 530 U.S. 148 ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

Therefore, the court finds that McFadden has presented sufficient evidence of intentional discrimination on the basis of age and disability to survive summary judgment.

### 2.     ADA Retaliation Claim

McFadden also claims that defendants violated the ADA by retaliating against him for taking medical leave in 2008 and for sending the Holmes Letter, in which he stated his belief that his termination was the result of age and disability discrimination.  Am. Compl. ¶ 24.

---

found that it was "insufficient to create an issue of fact as to pretext."  R&R at 17. The court does not necessarily disagree.  If this were the only inaccuracy contained in the record, the court might be able to overlook it.  Deal, 2010 WL 3418208, at *9 (finding that a "single, isolated error" in an EEOC position statement was not probative of pretext).  But it is not.  As outlined above, the EEOC letter contains at least two other statements that are materially inconsistent with Heeskens's testimony. Because the court is focused on the Sales Support Manager position, the statements addressed by the R&R are less relevant—although they certainly do not engender confidence in defendants' capacity for truthfulness.

An ADA retaliation claim, like the discrimination claims discussed above, may be proven through the McDonnell Douglas framework. Ennis, 53 F.3d at 58 ("[T]he McDonnell Douglas scheme of proof does apply to appropriate claims under the ADA."). To make out a prima facie claim of retaliation under the ADA, a plaintiff must satisfy three elements: (1) the plaintiff engaged in a protected activity, (2) the employer took an adverse employment action against the plaintiff, and (3) a causal connection existed between the protected activity and the adverse employment action. A Soc'y Without a Name v. Commonwealth of Va., 655 F.3d 342, 350 (4th Cir. 2011).

The magistrate judge recommended that McFadden had failed to present evidence of a causal connection between his medical leave, which ended on November 20, 2008 and his termination, which occurred eleven months later on October 23, 2009. The magistrate judge recognized that "the passage of time [between an employee's protected activity and an employer's adverse employment action] tends to negate any inference of a causal connection" and cited a number of cases finding time periods of less than ten months insufficient to support an inference of causation. R&R at 12 (collecting cases). Thus, the magistrate judge reasoned, the timing of McFadden's termination was not prima facie evidence of causation, and because McFadden had failed to present any other evidence on the issue, he could not maintain a retaliation claim based on his medical leave in 2008. Id. at 13. McFadden does not challenge this analysis in his objections, and the court finds it to be sound.

The magistrate judge further recommended that McFadden had failed to exhaust his administrative remedies with respect to the Holmes Letter because it was

not mentioned in his Charge of Discrimination. Id.  Even if exhaustion were not an

issue, the magistrate judge recommended that McFadden's retaliation claim failed at

the pretext stage of the analysis.  Id. at 14.  The court finds that the claim fails well

before that point.

> McFadden's amended complaint states:
>
> The mailing of [the Holmes Letter] constitutes conduct protected under the ADEA and ADA. The defendants have retaliated against the plaintiff by thereafter: a) by continuing to deny that the plaintiff expressed his desire to continue Konecranes employment anywhere in the world; b) by fabricating and continuing to use as a pretext for their unlawful discrimination, their contention that the plaintiff was told "he was free to apply for any other job with Konecranes" but that plaintiff "indicated that he had no desire to apply for any other job with Konecranes"; and c) by refusing to give the plaintiff access to, and any opportunity to apply for, suitable vacant positions of employment in Region Americas or elsewhere.

Am. Compl. ¶ 23.  The court begins by noting that the first two of the three ways in

which McFadden claims he was "retaliated against" are not "adverse employment

actions," they are simply positions defendants have taken in this litigation and before

the EEOC.  Id. (complaining that defendants have "retaliated against" him by

"continuing to deny that plaintiff expressed his desire to continue Konecranes

employment" and claiming that McFadden "was told 'he was free to apply for any

other job with Konecranes' but that plaintiff 'indicated that he had no desire to apply

for any other job with Konecranes'").  Such allegations simply do not satisfy the

elements of a retaliation claim.[13]

McFadden also claims that defendants retaliated against him for sending the

Holmes Letter "by refusing to give the plaintiff access to, and any opportunity to

---

[13] Even if a retaliation claim could be based on the arguments an employer makes in response to a claim of discrimination, the court finds no reason to believe that defendants decided to advance their arguments because of the Holmes Letter.

apply for, suitable vacant positions of employment." Am. Compl. ¶ 23. But there is no support for this in the record and it is entirely inconsistent with McFadden's claim that defendants denied him the opportunity to apply for other positions <u>at the time of his termination</u>. <u>See</u> Am. Compl. ¶ 21 ("Defendants' reply to plaintiff's plea for a position anywhere around the world was that his position was no longer needed and that there was nothing available for him anywhere in the company. This reply was untrue and a pretext for the defendants' termination of the plaintiff's employment."); Pl.'s Objections 22 (arguing that Heeskens and Wagner were aware of other job openings, or at least had a way of knowing whether there were other job openings at the time they represented to McFadden that there were no openings). McFadden has presented no evidence that defendants made the decision to frustrate his efforts to secure another position with the company <u>after</u> receiving the Holmes Letter.

In fact, McFadden's claim fails on the pleadings. As noted above, a plaintiff must establish a causal connection between the protected activity and the adverse employment action. <u>Society Without a Name</u>, 655 F.3d at 350. McFadden's claim lacks more than temporal proximity, it lacks basic temporal continuity. McFadden cannot show that the Holmes Letter caused defendants to take an adverse employment action against him because they had already done so. <u>Foster v. Univ. of Maryland-E. Shore</u>, 787 F.3d 243, 252 (4th Cir. 2015) (recognizing that a retaliation claim brought under the <u>McDonnell Douglas</u> framework must still prove that the protected action was a "but-for cause of a challenged adverse employment action").

Therefore, defendants are entitled to summary judgment on McFadden's retaliation claim.

26

## IV.  CONCLUSION

For the foregoing reasons, the court **ADOPTS** in part and **REJECTS** in part the R&R, and **GRANTS** defendants' motion for summary judgment with respect to McFadden's retaliation claim and **DENIES** defendants' motion for summary judgment with respect to McFadden's discrimination claims.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**March 31, 2017**
**Charleston, South Carolina**